IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID CHARLES SZOSTAK,      )
            )
       Plaintiff,      )
            )
     vs.      )   Civil Action No. 17-100
            )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social Security,    )
            )
      Defendant.     )
            )

AMBROSE, Senior District Judge

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 9 and 11]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 10 and 12]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment [ECF No. 11] and denying Plaintiff's Motion for Summary Judgment [ECF No. 9].

## I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. On or about August 20, 2013, Plaintiff applied for SSI, and, on or about August 29, 2013, he applied for DIB. [ECF No. 7-5, Exs. 1D, 2D]. On his SSI application, he alleged that he had been disabled since December 9, 2011, while, on his DIB application, he

alleged a disability date of January 19, 2012.  Id.  Plaintiff later amended his alleged onset date to August 1, 2013.  [ECF No. 7-4, Ex. 14B].  His date last insured was December 31, 2015. [ECF No. 7-2, at 17].  The state agency denied his claims initially, and he requested an administrative hearing.  [ECF No. 7-4, Ex. 7B].  Administrative Law Judge ("ALJ") Joanna Papazekos held a hearing on June 1, 2015, at which Plaintiff was represented by counsel.  [ECF No. 7-2, at 39-75].  Plaintiff appeared at the hearing and testified on his own behalf.  Id.  A vocational expert also was present at the hearing and testified.  Id. at 70-74.  In a decision dated August 26, 2015, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act.  [ECF No. 7-2, at 15-33].  Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on December 30, 2016, the Appeals Council denied Plaintiff's request for review.  [ECF No. 7-2, at 1-3].  Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment.  [ECF Nos. 9 and 11]. The issues are now ripe for my review.

## II.    **LEGAL ANALYSIS**

### A.    **STANDARD OF REVIEW**

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate."  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.

Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998).   Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole.   See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant.   20 C.F.R. §§ 404.1520, 416.920.   The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920.   The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406.   Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful

activity (step 5).  Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing.  Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B.**   **WHETHER THE ALJ PROPERLY CONSIDERED THE MEDICAL EVIDENCE OF RECORD IN EVALUATING PLAINTIFF'S MENTAL IMPAIRMENTS**

At Step Two of her analysis, the ALJ found that Plaintiff had the following severe impairments:  degenerative disc disease, depression, and bipolar disorder.  [ECF No. 7-2, at 17].  The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that Plaintiff was limited to lifting up to 15 pounds on an occasional basis and could perform postural maneuvers occasionally.  Plaintiff could sit 1/3 of the day, stand 1/3 of the day, and walk no more than 2/3 of the day.  He should not be asked to perform production rate-paced work and should have no contact with the public, no work as part of a team, and only occasional interaction with supervisors. He should work in a stable work environment, where the work place and the work process stay the same from day to day and where decision making involves several concrete variables in or from standardized situations, and should have no traveling as part of the job.  Id. at 19-31.  The ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform, including electronic worker, inspector, and marker.  Id. at 32-33.

Plaintiff argues that the ALJ erred when weighing the medical opinion evidence.  [ECF No. 16, at 12-15].  First, he asserts that the ALJ erred in failing to acknowledge Dr. Joseph Ambrose's and Dr. Gelfand's diagnoses of bipolar disorder in August 2006 and August 2008 as well as Dr. Gelfand's notes that Plaintiff had increased difficulty concentrating and inability to work, as well as some hallucinations, increased paranoia, and increasing irritability.  Id. at 12.  Plaintiff

also contends that the ALJ failed to acknowledge Dr. Peter Saxman's clinical disability evaluation dated November 25, 2008, finding marked and extreme impairments, as well as Dr. Marjorie Tavoularis's diagnosis of bipolar disorder and GAF score of 45 given on February 24, 2012, while Plaintiff was incarcerated. Id. at 12-13. After careful review, I find that Plaintiff's argument is without merit.

With respect to Plaintiff's bipolar disorder diagnosis, it is well-established that a diagnosis alone does not establish a disability. See Foley v. Comm'r of Soc. Sec., 349 F. App'x 805, 808 (3d Cir. 2009); Roberson v. Colvin, Civil Action No. 14-218, 2015 WL 4207154, at *9 (D.N.J. July 2, 2015). Moreover, and in any event, the ALJ nowhere disputes Plaintiff's bipolar disorder diagnosis. To the contrary, as set forth above, the ALJ found Plaintiff's bipolar disorder to be a severe impairment and also included numerous restrictions related to Plaintiff's mental impairments in her RFC finding. In addition, Plaintiff's contention that the ALJ failed to discuss the above records (all of which predate the disability onset date by as many as seven years) is patently false. Although the ALJ did not cite specific doctors by name, she repeatedly indicated that she had considered all of the pre-onset date medical evidence and concluded that it did not support Plaintiff's disability claims. See ECF No. 7-2, at 19-20, 28. Among other things, the ALJ noted that, during that time, Plaintiff's complaints of bipolar symptoms responded well to treatment and that, when compliant with medication and not engaged in alcohol abuse, Plaintiff's psychiatric symptoms were generally well controlled. Importantly, the ALJ pointed out that, notwithstanding Plaintiff's pre-onset date complaints, he was consistently able to return to full-time work and worked at the level of substantial gainful activity in all but two years through 2011. Id. (citing Ex. 8D). Plaintiff did not quit work due to an impairment, but, rather, was incarcerated in December 2011 following a DUI arrest and remained in prison until July, 2013, just prior to his

amended onset date.  See id. (citing Exs. 1F, 2F, 4F, 5F, 6F, 7F, 8F, 10F, 12F).

Also contrary to Plaintiff's contention, the ALJ specifically addressed Plaintiff's prison medical records, including Dr. Marjorie Tavoularis's notes and diagnosis of bipolar disorder.  Id. at 20, 28 (citing Exs. 8F, 9F).  As the ALJ correctly explained, the prison records, including Dr. Tavoularis's February 24, 2012 evaluation form, reflect normal clinical findings, such as unimpaired orientation and memory; well-groomed appearance; spontaneous and cooperative demeanor; normal psychomotor activity; appropriate and coherent speech; euthymic mood; appropriate affect, thought process, and thought content; no delusions or hallucinations; and fair insight and judgment.  [ECF No. 7-7 (Ex. 8F)].  The ALJ further cited prison records noting that Plaintiff was an "inmate worker" and had been "cleared for kitchen work," as evidence that he was able to perform some work during his incarceration.  [ECF No. 7-2, at 20].  The ALJ expressly acknowledged Dr. Tavoularis's GAF score of 45 (as well as a second GAF score of 55), but properly discounted the scores because the contemporaneous normal clinical findings did not support them.  Id. (citing Ex. 8F).[1]

Plaintiff additionally argues that the ALJ erred in failing to give appropriate weight to the opinions of Plaintiff's treating psychiatrist, Joel Last, and one-time consultative psychologist,

---

[1] The GAF scale is used by clinicians to report an individual's overall level of functioning.  See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003).  As courts have explained, however, a particular GAF score does not necessarily correlate to one's ability to work.  See, e.g., id. at 75.  A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)."  See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR").  A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood."  Id.  A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning."  Id.  A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning."  Id.  A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships."  Id.

Lindsey Groves.   [ECF No. 10, at 13-16].

The amount of weight accorded to medical opinions is well-established.   Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight.   20 C.F.R. §§ 404.1527(c), 416.927(c).[2]   To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record.   See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).   To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability.   20 C.F.R. §§ 404.1527, 416.927.   As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'"   Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)).   However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence.   Id.   Similarly, under 20 C.F.R. § 416.927[(c)](2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010).   Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason."   Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).   The ultimate issue of whether an individual is disabled within the meaning of the Act is for the

---

[2] Although the regulations governing the evaluation of medical evidence were recently amended, the version effective March 27, 2017, does not apply to the present claim. See 20 C.F.R. §§ 404.1527, 416.927 (2017); 20 C.F.R. §§ 404.1520c, 416.920c (2017).

Commissioner to decide.  20 C.F.R. §§ 404.1527(d)(1), (3); 416.927(d)(1), (3).  Likewise, the final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue.  Id. §§ 404.1527(d)(2), (3); 416.927(d)(2), (3).

Plaintiff argues that the ALJ erred in assigning no weight to Dr. Last's April 15, 2015 physician's report, in which he opined that Plaintiff was unable to work and had poor to no ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, or maintain attention/concentration; and only fair ability to use judgment and function independently.  [ECF No. 7-7 (Ex. 17F)].  Dr. Last's report also opined that Plaintiff had poor to no ability to understand, remember, and carry out complex, detailed, or simple job instructions; and only fair ability to maintain personal appearance, behave in an emotionally stable manner, relate predictable in social situations, and demonstrate reliability.  Id.  I disagree.

The ALJ rejected Dr. Last's opinions because they were internally inconsistent as well as inconsistent with the record as a whole, including Dr. Last's own treatment records.  [ECF No. 7-2, at 24-31].  Among other things, the ALJ explained that, although stating in the April 2015 report that Plaintiff had symptoms of mood disturbance, emotional lability, anhedonia, difficulty thinking or concentrating, decreased energy, manic syndrome, and generalized persistent anxiety, Dr. Last had never documented such symptoms in his own clinical evaluations of Plaintiff on mental status examinations conducted over the course of Plaintiff's treatment.  The ALJ also pointed out that Dr. Last's opinions on Plaintiff's functioning were inconsistent with Dr. Last's own progress notes, treatment records, and moderate GAF scores, as well as other evidence of record, including Plaintiff's medication regimen and treatment history, activities of daily living, and the consistently normal mental status exam findings documented by Plaintiff's neurologist and pain

management doctor.  Id.

The ALJ also properly discounted Dr. Groves's April 20, 2015 Physician's Report opining that Plaintiff was too limited to work.   [ECF No. 7-7 (Ex. 18F)].   Among other things, Dr. Groves opined that Plaintiff had poor to no ability to deal with the public, use judgment, interact with supervisors, deal with work stresses, behave in an emotionally stable manner, or relate predictably in social situations.   Id.   Dr. Groves also indicated that Plaintiff had extreme difficulties in maintaining social functioning and concentration, persistence, and pace, and that he had experienced four or more episodes of decompensation.   Id.

In assigning Dr. Groves's opinion only minimal weight, the ALJ noted that Dr. Groves was a one-time consultative examiner, and that she only spent 55 minutes with Plaintiff with no access to Dr. Last's progress notes. [ECF No. 7-2, at 25-26].   The ALJ further explained that Dr. Groves failed to provide any objective medical support, such as abnormal clinical mental status findings, for her opinions and that her opinions sharply contrasted with the consistently normal mental status findings reflected in Dr. Last's treatment records and in the other medical evidence of record.   Id.   The ALJ expressed concern that Dr. Groves appeared to accept Plaintiff's subjective allegations of symptoms at face value given that those symptoms sharply contrasted with the symptoms Plaintiff presented to his treating doctors.   Id.   In addition to Dr. Groves's failure to provide objective medical support for her opinions, the ALJ noted that those opinions were "grossly inconsistent" with the weight of the other substantial record evidence, including the longitudinal progress notes from Plaintiff's treating physicians and Plaintiff's admissions in testimony that he helps care for his elderly father who has dementia, goes to the store, and can interact with others and take public transportation as needed.   Id.   The ALJ also correctly pointed out that the record does not contain documentation of any episodes of decompensation, let alone

four or more.   Id.

The ALJ's reasons behind the weight assigned to Dr. Last's and Dr. Groves's April 2015 opinions are acceptable reasons for discounting opinion evidence.   See 20 C.F.R. §§ 404.1527; 416.927.   Based on the same, I am able to conduct a proper and meaningful review.   I find the reasons the ALJ provided in weighing Dr. Last's opinion and Dr. Groves's opinion were explained sufficiently and well-supported by substantial evidence of record.   [ECF No. 7-2 at 19-31]. Therefore, I conclude that the ALJ did not err in this regard, and remand is not warranted on this basis.[3]

To the extent Plaintiff further suggests that the ALJ impermissibly substituted his judgment for that of a medical provider in determining Plaintiff's mental limitations, such argument likewise is without merit.   See, e.g., ECF No. 10, at 15.   Contrary to Plaintiff's contention, the ALJ pointed to a plethora of evidence in support of the RFC finding, including Dr. Last's own treatment records and opinions.   For example, the ALJ cited to Dr. Last's medical source statement in September 2013 opining that Plaintiff had only mild limitations interacting appropriately with the public, supervisors, and co-workers; responding appropriately to usual work situations and changes; understanding, remembering, and carrying out simple and complex instructions; and making judgments on simple and complex work-related decisions.   [ECF No. 7-2, at 20-25; ECF No. 7-7 (Ex. 10F)].   The ALJ gave Dr. Last's 2013 opinions considerable weight, finding that they were well-supported by the normal clinical mental status findings documented during Plaintiff's contemporaneous appointments with Dr. Last.   [ECF No. 7-2, at 20-21 (citing Ex. 10F, 12F)].[4]

---

[3] To the extent Plaintiff supports her argument by suggesting that Dr. Last's or Dr. Groves's opinions are consistent with other medical evidence, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's finding. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, such support is misplaced.

[4] In his Brief, Plaintiff contends that Dr. Last's treatment of Plaintiff over time shows that Plaintiff's bipolar

The ALJ also gave considerable weight to the opinion of the state agency medical consultant that Plaintiff's mental impairments caused no restrictions on daily activities and moderate difficulties in concentration, persistence, or pace; and that Plaintiff suffered no related episodes of decompensation. [ECF No. 7-2, at 31 (citing Exhibits 1A and 2A, and noting that the consultant's assessments were well-supported by the weight of the objective medical evidence of record)]. The ALJ even gave Plaintiff the benefit of the doubt and gave less weight to the state agency consultant's opinion that Plaintiff had only mild difficulties in maintaining social functioning, stating that the evidence viewed in the light most favorable to Plaintiff indicated slightly greater limitations in that area. Id. The ALJ did not discount Plaintiff's complaints in their entirety, but, rather, included numerous limitations related to Plaintiff's mental impairments in his RFC finding, including limitations to no production rate-paced work; no contact with the public; no work as part of a team; only occasional interaction with supervisors; no traveling; and a stable work environment where the work place and process remain the same from day to day and where decision making involves several concrete variables in or from standardized situations. Id. at 19.

In short, after a review of the record, I find that, in weighing the medical opinions concerning Plaintiff's mental impairments and determining Plaintiff's RFC, the ALJ sufficiently explained and supported her findings with substantial evidence of record. Therefore, I find no error in this regard on the part of the ALJ.

---

disorder changed and became more severe between August 2013 and Dr. Last's report in April 2015. [ECF No. 10, at 13-14]. This argument is unpersuasive. As stated in the preceding footnote, the standard is not whether there is evidence to establish Plaintiff's position but, rather, is whether there is substantial evidence to support the ALJ's finding. As set forth herein, the ALJ properly supported his findings concerning Dr. Last's opinions with substantial evidence, including, but not limited to, Dr. Last's own treatment notes reflecting consistently normal clinical findings as late as March 26, 2015, as well as effective symptom management with medication adjustments over the time period in question.

**D. <u>WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S PAIN COMPLAINTS</u>**

Plaintiff summarily asserts early in his brief that the ALJ erred in failing to address his pain from daily headaches and cervical radiculopathy. [ECF No. 10, at 3]. Plaintiff fails to meaningfully develop this argument, however, in the body of his brief. In addition, to the extent Plaintiff makes cursory arguments in this regard, those arguments are patently without merit. For example, Plaintiff contends that the ALJ erred in giving considerable weight to the May 13, 2015 Physical Functional Capacity Evaluation ("FCE") completed by physical therapist Thomas Buches to show that Plaintiff was capable of performing a reduced range of light physical work. <u>Id.</u> at 15-16. Specifically, Plaintiff contends that the FCE was unaccompanied by a written medical report and, therefore, is not substantial evidence. <u>Id.</u> The 2015 FCE, however, is not simply a check-the-box form devoid of explanation. Rather, the FCE demonstrates that the physical therapist conducted a job simulation, objectively tested Plaintiff on numerous material and non-material handling activities and hand functions, and assessed his range of motion. [ECF No. 7-7 (Ex. 22F)]. He also had Plaintiff complete pain questionnaires to better assess his perception of pain; tested Plaintiff on different validity criteria; and monitored Plaintiff's heart rate. <u>Id.</u> Contrary to Plaintiff's assertions, a 3.5 page, single-spaced, narrative report accompanied the FCE explaining the evaluation, results, and findings in detail. <u>Id.</u> Moreover, and in any event, the physical therapist did not dismiss Plaintiff's pain complaints in their entirety. Rather, although he observed that Plaintiff's pain behavior and movement patterns were slightly out of proportion to his pain reports during the testing, the therapist agreed that Plaintiff was experiencing some pain, including neck and interscapular pain that increased during portions of the testing. <u>Id.</u> Indeed, the therapist concluded that Plaintiff would have difficulty returning to his job as a heavy equipment mechanic for the reasons set forth in the report, including decreased cervical motion

and pain in cervical extension.   <u>Id.</u>

Similarly, Plaintiff bizarrely faults the ALJ for giving only limited weight to the opinion of the state agency medical consultant that Plaintiff's only severe impairments were mental impairments and that Plaintiff could perform heavy/very heavy work.   [ECF No. 10, at 15-16 (citing ECF No. 7-2, at 31)].   To the extent the ALJ rejected the state agency opinion, it was because she *agreed* that Plaintiff had physical, as well as mental, limitations that would prevent him from performing more than a limited range of light work.   [ECF No. 7-2, at 31 (citing Exs. 1A, 2A)].   The ALJ found Plaintiff's degenerative disc disease to be a severe impairment and included numerous physical limitations in the RFC finding, including a restriction to light work with an additional limitation to lifting up to 15 pounds on an occasional basis; occasional performance of postural maneuvers; and sitting 1/3 of the day, standing 1/3 of the day, and walking no more than 2/3 of the day.   <u>Id.</u> at 17, 19.

Pursuant to 20 C.F.R. §§ 404.1529 and 416.929, the Commissioner must consider all "symptoms, including pain," in the disability determination.   Statements of pain alone, however, are not enough to establish a disability; the claimant must also present objective medical evidence to show that the medical impairment "could reasonably be expected to produce the pain or other symptoms alleged."   20 C.F.R. §§ 404.1529(a); 416.929(a); S.S.R. 96-7p.   Once the Commissioner has determined from the "medical signs or laboratory findings" that the claimant has an impairment which could reasonably produce the pain, the Commissioner must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine how the pain limits the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p.   In determining the limits on the claimant's capacity for work, the Commissioner will consider the entire case record, including evidence from the treating, examining and consulting

physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p. The Commissioner also will look at inconsistencies between the claimant's statements and the evidence presented. 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his limitations or symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129–30 (3d Cir. 2002). Although the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence she rejects and the reasons for discrediting such evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). Ordinarily, an ALJ's credibility determination is entitled to great deference. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003).

Here, the ALJ considered Plaintiff's complaints of pain in accordance with the regulations and properly concluded that those complaints were not fully credible and did not limit Plaintiff's ability to perform a limited range of work. [ECF No. 7-2, at 19-31]. As set forth above, the ALJ directly addressed Plaintiff's allegations that his impairments caused pain and did not reject those allegations entirely. Rather, the ALJ incorporated numerous limitations related to Plaintiff's pain complaints in her RFC finding. See id. at 19. The ALJ thoroughly analyzed the evidence, including diagnostic test results, the FCE, Plaintiff's medication and treatment history, other objective medical evidence, and Plaintiff's self-reported activities of daily living, citing numerous records that were inconsistent with Plaintiff's testimony and with a finding of totally disabling pain. See id. at 21-31 and records cited therein.

14

For all of these reasons, I find that the ALJ properly evaluated Plaintiff's pain complaints and that substantial evidence supports the ALJ's ruling and her rejection of parts of Plaintiff's testimony as not fully credible.   See Burns, 312 F.3d at 130.

**E.   HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT**

Plaintiff argues that remand is necessary because the ALJ's questions to the vocational expert did not accurately reflect his impairments.   Pl.'s Br. [ECF No. 10] at 15-16.   I disagree. An ALJ is only required to accept the responses that accurately reflect a claimant's impairments. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).   In this case, the record reveals substantial evidence that the hypothetical questions the ALJ adopted accurately reflected Plaintiff's impairments.   [ECF No. 7-2, at 19-31; No. 7-3, at 70-74].   As set forth in the preceding sections, the record evidence does not support the additional limitations Plaintiff contends the ALJ should have included.

Because the ALJ properly considered Plaintiff's limitations supported by the record, I find no error on this issue.

**III. CONCLUSION**

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.   An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID CHARLES SZOSTAK,     )
                                          )
           Plaintiff,         )
                                          )
        vs.              )     Civil Action No. 17-100
                                          )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social Security,  )
                                          )
        Defendant.     )
                                          )

AMBROSE, Senior District Judge

**ORDER OF COURT**

AND NOW, this 26th day of February, 2018, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED, and Plaintiff's Motion for Summary Judgment [ECF No. 9] is DENIED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge